IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JAMES RENNE,

    Plaintiff,

    v.

SOLDIER CREEK WIND LLC,

    Defendant.

Case No. 21-4032-HLT-ADM

**MEMORANDUM AND ORDER**

Plaintiff James Renne ("Renne") filed this lawsuit against various corporate entities affiliated with NextEra Energy Resources ("the world's largest producer of wind and solar energy"[1]) for erecting "a colossal 495 foot electric wind turbine with over 200 foot rotating arms" too close to Renne's property line, thus disrupting his construction plans because it was "far too dangerous to site any buildings … directly under the looming wingspan of the turbine tower's massive arms."  (ECF 1, ¶¶ 6, 9.)  On July 25, 2022, the court issued an order dismissing all of Renne's claims against all defendants with the exception of a nuisance claim against the NextEra entity that is the undisputed actual owner and operator of the wind-turbine project, Soldier Creek Wind LLC ("Soldier Creek").  Renne then filed the current Motion for Leave to Amend to File Third Amended Complaint that is currently before the court.  (ECF 60.)  By way of this motion, Renne seeks to re-add claims against two of the NextEra defendants by trying to rectify the pleading deficiencies identified in the court's July 25 order.  For the reasons explained below, Renne's motion is denied on grounds of futility and undue delay.

---

[1] NextEra Energy Resources, Home Page, *available at* https://www.nexteraenergyresources.com/ (last visited Oct. 26, 2022).

**I.      BACKGROUND**

On May 18, 2021, Renne filed a complaint alleging nuisance and class action allegations against NextEra Energy, Inc. ("NEE"), NextEra Energy Capital Holdings, Inc. ("NECH"), NextEra Energy Resources LLC ("NEER"), NextEra Energy Constructors LLC ("NEC"), NextEra Energy Operating Services LLC ("NEOS"), NextEra Energy Project Management LLC ("NEPM"), and Soldier Creek. (ECF 1.) On May 25, the court issued a notice and order to show cause because the complaint did not allege facts sufficient to establish subject matter jurisdiction. (ECF 4.) Specifically, the complaint did not specify whether Renne was invoking diversity jurisdiction under 28 U.S.C. § 1332(a) or jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d). Furthermore, the complaint did not allege facts sufficient to establish the amount in controversy or to support complete diversity of citizenship between Renne and defendants. Renne responded to the order to show cause on June 1, attaching a proposed amended complaint that the court found sufficiently alleged subject matter jurisdiction. (ECF 5-6.) The court also instructed Renne that he could file the proposed amended complaint as a matter of right (ECF 6), but Renne did not timely file the amended complaint.

Over two months later on August 11, Renne filed an "Amended Complaint Filed As a Matter of Course."[2] (ECF 9.) Defendants then waived service of process and, on December 10, they filed motions to dismiss for lack of personal jurisdiction and/or failure to state a claim. (ECF 24-27.) Instead of responding to the motions to dismiss, Renne filed an agreed motion for leave

---

[2] By this time, the amended complaint no longer qualified as an amendment "as a matter of course" because it was not filed within "21 days after serving it," nor was it served "21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f)." FED. R. CIV. P. 15(a)(1).

2

to amend pursuant to Fed. R. Civ. P. 15(a)(2). (ECF 33.) On January 18, 2022, the court granted this motion as unopposed, thus mooting defendants' first round of motions to dismiss. (ECF 34.)

Renne then filed a second amended complaint on January 20 in which he asserted private nuisance, class action, and inverse condemnation claims. (ECF 35.) On February 17, defendants again filed motions to dismiss for lack of personal jurisdiction and failure to state a claim. (ECF 40-43.) This time, Renne did not seek leave to amend. Instead, he responded to the motions to dismiss, which became ripe when defendants filed their replies on April 18 and 27. (ECF 46, 50, 53.)

On June 2, Renne filed a motion asking the court to take judicial notice of the federal indictment, sentence, and conviction of a non-party affiliate of NEER "for a nationwide criminal pattern and practice of known criminal kills of over 150 golden eagles and bald eagles." (ECF 54.) The court denied this motion without prejudice because the relevance and admissibility of the information was unclear, and because Renne had not explained how "the Court should use this information given that it does not appear relevant to the pending motions to dismiss." (ECF 55.)

On July 25, the court issued a 28-page order dismissing most of Renne's claims. (ECF 56.) Specifically, the court dismissed Renne's claims against NEE and NECH because Renne's second amended complaint did not establish personal jurisdiction over them. Furthermore, the court dismissed Renne's claims against all defendants except Soldier Creek for failure to state a claim upon which relief can be granted because Renne's complaint did not allege that any of them are the owners or operators of the Soldier Creek wind farm at issue. In addition, the court struck Renne's putative class claim and dismissed his claim for inverse condemnation. Following this ruling, the only surviving claim is Renne's nuisance claim against Soldier Creek, which is the undisputed actual owner and operator of the wind-turbine project.

On August 23, Soldier Creek filed its answer to the second amended complaint. (ECF 59.) The next day, Renne filed the current motion, seeking leave to file a third amended complaint. (ECF 60.) By way of this motion, Renne seeks to re-add private nuisance claims against NEER and NEPM. Renne contends that his proposed third amended complaint abandons the collective pleading style that the court found too imprecise and insufficiently clear and instead adds more specific allegations as to NEER and NEPM. (*Id.* at 3.) Soldier Creek opposes the amendment for reasons of undue delay and futility. (ECF 65.)

## II.   LEGAL STANDARD

Once a responsive pleading has been filed, a party "may amend its pleading only with the opposing party's written consent or the court's leave," which should be freely given when justice requires. FED. R. CIV. P. 15(a)(2). The purpose of the rule "is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *SCO Grp., Inc. v. Int'l Bus. Machines Corp.*, 879 F.3d 1062, 1085 (10th Cir. 2018) (internal quotation marks omitted). The court may refuse leave to amend "only [upon] a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 (10th Cir. 2010); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (same). Thus, a court is justified in denying a motion to amend as futile if the proposed amendment could not withstand a motion to dismiss or otherwise fails to state a claim. *Ketchum v. Cruz*, 961 F.2d 916, 920 (10th Cir. 1992).

Practically speaking, the party opposing a motion to amend generally bears the burden to demonstrate why the amendment should not be permitted. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (stating the party opposing amendment bears the burden

to show undue prejudice and that there is a presumption in favor of amendment absent such a showing "or a strong showing of any of the remaining *Foman* factors"). Whether to grant a motion to amend is within the court's sound discretion. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006).

## III. ANALYSIS

Soldier Creek argues the "proposed amended claims do not contain any allegations that Plaintiff could not have asserted earlier" and that "Plaintiff still cannot assert any valid claim against any entity that does not own or operate the wind farm." (ECF 65, at 1.)[3] As explained below, the court agrees with Soldier Creek that Renne should be denied leave to amend on grounds of undue delay and futility. The court will analyze these arguments in reverse order by turning first to the issue of futility.

### 1. Futility

"A proposed amendment is futile if the [pleading], as amended, would be subject to dismissal." *Jefferson Cty. Sch. Dist. No. R-1 v. Moody's Inv'r's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999). In the context of futility, the court often considers whether the amended complaint could withstand a Rule 12(b)(6) motion to dismiss or otherwise fails to state a claim.

---

[3] Soldier Creek also opposes the amendment on the grounds that Renne's motion is essentially a motion for reconsideration that is untimely and without merit. The court declines to construe the motion as one for reconsideration because Renne did not style the motion as such, perhaps because the time for filing a motion for reconsideration had expired. Regardless, the motion does not raise any grounds that would warrant reconsideration under FED. R. CIV. P. 59(e) or D. KAN. RULE 7.3. For the reasons explained herein, it essentially constitutes an attempt to "revisit issues already addressed or advance arguments that could have been raised earlier." *United States v. Christy*, 739 F.3d 534, 539 (10th Cir. 2014). A motion to reconsider is not "a second opportunity for the losing party to make its strongest case, to rehash arguments or to dress up arguments that previously failed." *United States v. Huff*, 782 F.3d 1221, 1224 (10th Cir. 2015) (quotation omitted). That is precisely the gist of Renne's arguments and, as such, he has not presented any grounds that would warrant reconsideration.

*Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1239-40 (10th Cir. 2001) (a "proposed amendment is futile if the complaint, as amended, would be subject to dismissal for any reason"); *Ketchum v. Cruz*, 961 F.2d 916, 920 (10th Cir. 1992); *see* 6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1487 (3d ed.) (collecting cases). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *ConAgra Foods Food Ingredients Co., Inc. v. Archer-Daniels-Midland Co.*, No. 12-2171-EFM-KGS, 2014 WL 359566, at *2 (D. Kan. Feb. 3, 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted)).

Here, Renne's predominant argument is that the proposed third amended complaint rectifies the prior pleading deficiencies identified by the court by "abandoning the collective pleading style previously utilized and augmenting with much more specific allegations" as to defendants NEER and NEPM. (ECF 60, at 3.)  In the court's order dismissing Renne's claims against the NextEra Defendants (other than Soldier Creek), the court remarked that it "struggled somewhat to discern precisely the grounds upon which Plaintiff believes he can hold Defendants liable for the conduct about which he complains, especially given that it is undisputed that Soldier Creek is the owner and operator of the project." (ECF 56, at 12.)  The court examined Renne's allegations about the interplay amongst the various corporate defendant entities, explained that they were conclusory in nature, and dismissed his claims against them because Renne "has not pleaded facts suggesting that NextEra Defendants are the owners or operators of the wind turbines about which he complains, nor has he pleaded facts showing a basis for joint and several liability, a joint venture or common enterprise, or direct liability." (*Id.* at 12-18.)

Renne's proposed third amended complaint does not rectify these defects. It states, in various ways, that NEER owns and operates its subsidiary defendant Soldier Creek and its Soldier

Creek Wind Project. (ECF 60-1 ¶ 5.) Furthermore, it generally explains that NEER employee Spencer Jenkins was the lead project developer for the wind farm and NEPM employee Ryan Legge engaged in settlement discussions with other Nemaha County residents. The proposed third amended complaint also references a number of attached exhibits and web links that collectively show essentially that NEER representatives met with Nemaha County Commissioners in 2018 regarding the status of the project; that Jenkins managed development of the project, including settlement negotiations with landowners; that NEPM employees were assigned certain duties relating to the project; that "NextEra Energy representatives" attended a meeting in 2019 at which county commissioners approved the project; that NEER personnel negotiated development and other agreements with Nemaha County officials in 2019 and early 2020; and that NEER recently made a payment for violating an agreement. (*See* ECF 60-3 through 60-10; ECF 60-1 ¶¶ 5(a)-5(j).)

Nowhere does the proposed third amended complaint allege or provide facts from which it could reasonably be inferred that NEER or NEPM currently own or operate the wind farm project so as to impose nuisance liability on them for a wind farm that is undisputedly owned and operated by a separate corporate entity, Soldier Creek. The district judge already explained this in her dismissal order. (ECF 56, at 12-13 (explaining that a parent company "has a separate corporate existence and is treated separately from the subsidiary in the absence of circumstances justifying disregard of the corporate entity" and noting that Renne has not suggested defendants are "merely alter egos for each other or that piercing the corporate veil is otherwise necessary" to overcome the presumption of corporate separateness).) Nor has Renne addressed the district judge's observation that Renne failed to explain how NEER and NEPM's "involvement at some point in the construction of the wind turbines renders them directly liable for nuisance under Kansas law."

7

(*Id*. at 16.)  The facts alleged in the proposed third amended complaint also fail to plausibly show the existence of a joint venture or joint enterprise, for the same reasons given in the district judge's dismissal order.  They do not plausibly allege the elements of "(1) the joint ownership and control of property; (2) the sharing of expenses, profits and losses, and having and exercising some voice in determining the division of the net earnings; (3) a community of control over and active participation in the management and direction of the business enterprise; (4) the intention of the parties, express or implied; and (5) the fixing of salaries by joint agreement."  (ECF 56, at 14.)

In short, the proposed third amended complaint contains no factual allegations from which the court could "draw the reasonable inference that [NEER or NEPM] is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  Accordingly, it does not assert plausible nuisance claims against NEER and NEPM.  The court therefore denies Renne's motion as futile.

### 2. Undue Delay

Next, the court turns to Soldier Creek's argument that Renne has unduly delayed in seeking leave to amend.  The undue delay analysis begins by examining the reasons for delay.  *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 (10th Cir. 2010) (quoting *Duncan v. Manager, Dep't of Safety, City & Cty. of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005)).  The court can deny leave to amend when the movant does not have an adequate explanation for the delay.  *Minter*, 451 F.3d at 1206.  If the movant knew for some time about the facts on which he bases the amendment, the court may deny his request to amend.  *Id*. at 1205-06; *see also Fed. Ins. Co. v. Gates Learjet Corp.*, 823 F.2d 383, 387 (10th Cir. 1987) (noting that "[c]ourts have denied leave to amend where the moving party was aware of the facts on which the amendment was based for some time prior to the filing of the motion to amend").  The longer a plaintiff delays, the more likely it is a court will deny leave.  *Minter*, 451 F.3d at 1205; *see also Steinert v. The Winn Grp., Inc.*, 190 F.R.D. 680, 684 (D. Kan. 2000) ("Untimeliness in itself can be a sufficient reason to deny leave to amend, particularly

when the movant provides no adequate explanation for the delay." (quoting *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1495 (10th Cir. 1995))).

Renne contends the court should allow the amendment because "preliminary information" indicates "direct acts or a coordinated joint enterprise relationship" among defendant Soldier Creek, NEER, and NEPM. (ECF 60, at 3.)[4] But Renne's "preliminary information" (*see* ECF 60-2 through 60-10; ECF 66-1 & 66-2) consists of facts he knew or should have known before the court issued its July 25 order and before Renne filed his proposed third amended complaint. This includes facts taken from the following sources:

- A news release dated April 5, 2022, regarding an agreement between the Department of Justice and ESI Energy, LLC (which has never been named in this action) concerning eagle deaths at certain wind farms. The news release does not mention the Soldier Creek wind farm. (ECF 60-3.)

- Declarations from Casey and Sharon Bloom in which they describe events that occurred in 2020. (ECF 60-4, 60-5, 66-1, and 66-2.)

- A 2018 article titled "Plans for proposed Nemaha Co wind farm advance." (ECF 60-6.)

- A declaration from Jenkins dated June 2, 2020, allegedly filed in a different civil action in the District of Columbia titled *Mattwaoshshe et al. v. United States of Am. et al. & NextEra Energy, Inc., et al*. (ECF 60-7.)

- Declarations from NEPM employees Mark Woods and Legge, but defendants previously filed these declarations on April 18 in connection with their reply in support of their motions to dismiss. (ECF 60-8, at 1-6.)

- A 2019 article from *The Sabetha Herald* titled "Soldier Creek Wind Farm: Commission unanimously approves term sheet, site plan." (ECF 60-9.)

---

[4] Renne also points out that the proposed third amended complaint accurately reflects the court's dismissal order by deleting references to the class action and inverse condemnation claims, as well as references to the dismissed NextEra Defendants other than NEER and NEPM. (ECF 60, at 2-3.) But these proposed changes are unnecessary because the Federal Rules of Civil Procedure do not require a party to re-plead to conform to a dismissal order.

- A 2020 article from *The Sabetha Herald* titled "County approves wind far definitive agreements." (ECF 60-10.)

Renne does not explain his delay in moving for leave to amend to add these facts or why he could not have included these additional facts in an earlier amendment. All of these facts could have been presented to the court in conjunction with the parties' briefing on the motions to dismiss *before* the district judge ruled on those motions on July 25.[5] Renne certainly knew that he could seek leave to amend his complaint while motions to dismiss were pending. He had previously filed an agreed motion for leave to file his second amended complaint (ECF 33) that, when granted, mooted defendants' motions to dismiss. (ECF 34.) Renne also cannot claim he did not know when or how to bring to the court's attention new information bearing on the motions to dismiss. On June 2, after the motions to dismiss were fully briefed, Renne filed a motion asking the court to take judicial notice of the federal indictment, sentence, and conviction of a NEER affiliate for eagle killings. (ECF 54 (moving for judicial notice of source #1, *supra*).) On June 3, the court denied this motion without prejudice because the relevance and admissibility of the information was unclear, and because Renne had not explained how "the Court should use this information given that it does not appear relevant to the pending motions to dismiss." (ECF 55.) Yet Renne never attempted to present to the court any of his other "preliminary information" prior to the court's ruling on the motions to dismiss on July 25.

Renne also does not explain why he waited until now to attempt to remedy the defects in his second amended complaint concerning NEER and NEPM, which defendants repeatedly identified in their briefing on the motions to dismiss. (*See* ECF 25, at 6-7 ("There is no factual

---

[5] As discussed *supra*, even if these sources had been presented to the court in conjunction with the motions to dismiss (as two of them were), they do not appear to contain any relevant information regarding the acts of NEER and NEPM that the court did not already have before it when ruling on the motions to dismiss.

information in the Amended Complaint which plausibly shows the existence of any connection between these Defendants and the Project.  Plaintiff merely summarily alleges that there is a 'joint venture and common enterprise related to Plaintiff's claims.'"), ECF 27, at 10-11 ("There is no factual information in the Complaint which plausibly shows the existence of any connection between the Florida Defendants and the Project.  Plaintiff merely summarily alleges that there is a 'joint venture and common enterprise related to Plaintiff's claims.'"), ECF 41, at 6-7 ("NEC, NEOS and NEPM do not own or operate the Project nor did any of these defendants develop, permit or build the Project."), ECF 47, at 11-13 ("There is no factual allegation which plausibly shows the existence of any connection between the Florida Defendants and the Project. Plaintiff merely summarily alleges that there is a 'joint venture and common enterprise related to Plaintiff's claims.'").)  Instead of moving to amend when put on notice of these defects, Renne waited to see whether the court would allow his claims to move forward.  The court will not condone this "wait and see approach." *See Schwab v. Ingels*, No. 18-2488-DDC-GEB, 2020 WL 2037049, at *6 (D. Kan. Apr. 28, 2020) (citing *Kader v. Sarepta Therapeutics, Inc.*, 887 F.3d 48, 61 (1st Cir. 2018) (condemning a "wait and see approach to pleading" where a plaintiff "having the needed information, deliberately wait[s] in the wings" until the court issues a ruling on the first complaint (internal quotation marks omitted))).

      The court therefore exercises its discretion to deny Renne's motion under Rule 15(a)(2) because he unduly delayed in moving to amend and has no adequate explanation for the delay.[6] In doing so, the court recognizes that it is denying leave to amend based on undue delay before discovery has even begun.  But this case has been bogged down for nearly 18 months with an

---

[6] Soldier Creek does not argue that it will be prejudiced by the proposed amendment, but a finding of prejudice to the opposing party is not required. *Steinert*, 190 F.R.D. at 684 (citing *Woolsey v. Marion Lab., Inc.*, 934 F.2d 1452, 1462 (10th Cir. 1991)).

ongoing cycle of pleading, motions to dismiss, repleading, more motions to dismiss, and now yet another futile attempt to replead. At this point, the scope of the case has been properly refined to the surviving nuisance claim against Soldier Creek, and it is time for the parties to move forward with discovery on that claim without further delay. The court recognizes the possibility that Renne may seek leave to amend if he learns additional information in discovery. But, at least at this procedural juncture, it is clear to the court that the proposed third amended complaint is not legally justified and that allowing it would undermine the "just, speedy, and inexpensive determination" of this action. *See* FED. R. CIV. P. 1.

**IT IS THEREFORE ORDERED** that Renne's Motion for Leave to Amend to File Third Amended Complaint (ECF 60) is denied.

**IT IS SO ORDERED.**

Dated October 31, 2022, at Kansas City, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge
