IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JAMES RENNE,

    Plaintiff,

    v.

NEXTERA ENERGY, INC., et al.,

    Defendants.

Case No. 5:21-cv-04032-HLT-ADM

**MEMORANDUM AND ORDER**

This case arises out of the construction of wind turbines in Kansas. Plaintiff James Renne asserts a nuisance claim against Defendant Soldier Creek. Other claims and defendants have been dismissed. Plaintiff has twice sought to amend the complaint to add some of the dismissed defendants—NextEra Energy Resources ("NEER") and NextEra Energy Project Management ("NEPM")—back into the case. Both motions were denied by the magistrate judge. Plaintiff now seeks review of the second of those orders. Doc. 127. The Court employs a de novo review and concludes that: (1) Plaintiff fails to show good cause under Rule 16 for amending the complaint five months after the deadline for doing so and (2) the proposed amendment is both untimely and futile under Rule 15. The objection is overruled. Leave to amend is denied.

**I.    BACKGROUND**

    **A.    Pleading History and Motions to Dismiss**

This case is related to two others pending in the District of Kansas: *Bloom et al v. NextEra Energy, Inc. et al*, Case No. 5:21-cv-04058-HLT-ADM (D. Kan.), and *Stallbaumer v. NextEra*

*Energy Resources, LLC et al*, Case No. 5:22-cv-04031-HLT-ADM (D. Kan.).[1] This case and *Bloom* have generally proceeded together, though none of the cases are formally consolidated. *Stallbaumer* involves the same issues but was filed later than the others. The magistrate judge recently issued identical amended scheduling orders in all three cases to align the deadlines.

Plaintiff initially filed a complaint in May 2021. Doc. 1. After a show-cause order was entered, the Court directed Plaintiff to file an amended complaint as a matter of course to address some jurisdictional defects in the original complaint. Doc. 6. Plaintiff did so two months later, without explanation for the delay. Doc. 9. After Defendants moved to dismiss, Plaintiff responded with an unopposed motion to file a second amended complaint. Doc. 31-33. The Court granted the motion to amend and denied the motions to dismiss as moot, and Plaintiff filed a second amended complaint. Docs. 34-35.

Defendants responded to the second amended complaint by again moving to dismiss. The Court subsequently granted in part and denied in part the motions on July 25, 2022. Doc. 56. Relevant here, the Court dismissed all the so-called NextEra Defendants because they are not the owner and operator of the wind turbine project. *Id.* at 28.[2] The only surviving claim was a nuisance claim, and the only remaining defendant was Soldier Creek, who both parties acknowledge owns and operates the project. *Id.* at 12, 28. In dismissing the NextEra Defendants, the Court stated it "struggled somewhat to discern precisely the grounds on which Plaintiff believes he can hold [the NextEra] Defendants liable for the conduct about which he complains, especially given that it is undisputed that only Soldier Creek is the owner and operator of the project." *Id.* at 12. Although the NextEra Defendants have a parent-subsidiary relationship with Soldier Creek, they still have a

---

[1] Cites to docket entries in this case will be to "Doc. __." Any cites to docket entries in the other cases will be designated with the respective case name.

[2] Two NextEra Defendants were also not subject to personal jurisdiction. Doc. 56 at 28.

2

separate corporate existence. *Id.* There were no allegations they are alter egos or that piercing the corporate veil is necessary. *Id.* at 13. Although Plaintiff argued he was alleging joint and several liability, or a joint venture or common enterprise, the Court found that there were no facts alleged to support those legal conclusions. *Id.* at 13-14. Finally, to the extent Plaintiff alleged the NextEra Defendants are directly liable based on their involvement in the development and construction of the wind farm, Plaintiff failed to "explain how their involvement at some point in the construction of the wind turbines renders them directly liable for nuisance under Kansas law." *Id.* at 16. Accordingly, the Court dismissed the claims against the NextEra Defendants, including NEER and NEPM. *Id.* at 18.

### B. First Contested Motion to Amend

About a month later, Plaintiff filed a motion for leave to file a third amended complaint, seeking to add back in the dismissed nuisance claims against NEER and NEPM. Doc. 60. Specifically, he sought to correct collective pleading issues, reference some new evidence that those involved in the wind project were NEPM employees, and explain that Soldier Creek is the "junior partner of sorts in this enterprise" while NEER and NEPM are the leaders. *Id.* at 3-4. He wished to address the Court's ruling on the motion to dismiss that only Soldier Creek owns and operates the project by alleging that NEER owns Soldier Creek and that NEER and NEPM "were very active in Kansas on the Project even apparently more so than Soldier Creek Wind LLC and, at least, jointly involved in critical matters relevant to the claims." *Id.* at 6. According to Plaintiff, NEER and NEPM are "the primary actors and jointly liable for the harms to Plaintiff." *Id.* at 7.

The magistrate judge denied leave to amend on grounds of futility and undue delay. Doc. 67. On the issue of futility, she concluded that the proposed third amended complaint did not address the Court's questions about how Plaintiff intended to hold NEER and NEPM liable for

3

nuisance for a project it does not own, even considering the allegations that NEER and NEPM employees were involved in the development of the project. *Id.* at 6-8. The magistrate judge also agreed Plaintiff had unduly delayed in seeking leave to amend. Specifically, all the information relied on by Plaintiff had long been known to him. *Id.* at 9-11. No explanation for the delay was given. *Id.* at 10. The magistrate judge therefore denied leave to amend and further noted:

> [T]his case has been bogged down for nearly 18 months with an ongoing cycle of pleading, motions to dismiss, repleading, more motions to dismiss, and now yet another futile attempt to replead. At this point, the scope of the case has been properly refined to the surviving nuisance claim against Soldier Creek, and it is time for the parties to move forward with discovery on that claim without further delay. The court recognizes the possibility that Renne may seek leave to amend if he learns additional information in discovery. But, at least at this procedural juncture, it is clear to the court that the proposed third amended complaint is not legally justified and that allowing it would undermine the "just, speedy, and inexpensive determination" of this action.

*Id.* at 11-12 (citing Fed. R. Civ. P. 1).

The case proceeded to discovery. The December 2022 scheduling order set a discovery deadline of May 12, 2023, and a deadline for motions to amend of February 2, 2023. Doc. 70 at 2. The parties sought to modify the scheduling order at least three times, primarily for expert related discovery issues. Docs. 84, 87, 96. The magistrate judge has extended several deadlines. But the February 2 deadline for motions to amend passed without any motions, and the deadline was not extended.

### C. Second Contested Motion to Amend

On July 3, 2023, Plaintiff filed another motion to amend the complaint. Doc. 101. Plaintiff again sought to re-add NEER and NEPM to the case. He argued that new evidence suggested "both NEER and NEPM are both the current owner and operator of the Project itself and partially and jointly, if not primarily, liable for causing the nuisance central to Plaintiff's claims." *Id.* at 2.

4

Plaintiff acknowledged that the "motion is being filed after the date in the Scheduling Order for amending" but contended that "the definitive nature of the new evidence is compelling and should be allowed adjudication on the merits." *Id.* at 3 n.2. This new evidence was that NEER and NEPM had recently withdrawn certain arguments in the *Stallbaumer* case, that a NEER employee had made relevant statements at a county commissioners' meeting, and that some emails received in discovery justified amendment. *Id.* at 9-12. Plaintiff contended that this new evidence was sufficient to render NEER and NEPM potentially directly liable for nuisance, though he did not cite any authority on this point. *See id.* at 15.

The magistrate judge denied the motion based on untimeliness and futility. Doc. 113 at 2. She noted that because the scheduling-order deadline for pleading amendments had passed, Plaintiff was required to satisfy the requirements of both Rule 16 and Rule 15. *Id.* at 2-3. As to Rule 16, the magistrate judge noted that Plaintiff did not address Rule 16 in the motion or explain his delay in moving to amend, let alone show good cause. *Id.* at 3. She noted that Plaintiff had two months to conduct discovery before the February 2 deadline passed, and yet he still waited until July 3—five months after the deadline—to file the motion. *Id.* at 3-4. Even to the extent Plaintiff was motivated to seek amendment in light of statements made at an April 2023 Jackson County commissioners' meeting, Plaintiff still waited two and a half months to seek leave to amend. *Id.* at 4. Based on this, the magistrate judge found Plaintiff had not demonstrated diligent efforts to meet the scheduling-order deadline and thus had not satisfied Rule 16's good-cause standard. *Id.*

The magistrate judge also found Plaintiff had not satisfied Rule 15. *Id.* First, the request to amend was unduly delayed for the same reasons Plaintiff had not act diligently under Rule 16. *Id.* at 5. The magistrate judge also found amendment would be futile. *Id.* She found the proposed amended pleading did not plausibly allege that NEER or NEPM are the owner and operators of

5

the project, nor had he demonstrated a basis for joint and several liability, the existence of a joint venture or common enterprise, or any grounds to hold NEER and NEPM directly liable for nuisance. *Id.* The magistrate judge found that the NEER employee's statements at the commissioners' meeting did not establish that NEER owns the project because they did not directly address the project. *Id.* at 5-6. Nor was she persuaded NEER and NEPM had conceded in the *Stallbaumer* case that they own and operate the project. *Id.* at 6. The withdrawn arguments related instead to personal jurisdiction. *Id.*

In sum, the magistrate judge found Plaintiff just repeated arguments previously rejected and failed to explain how he could hold NEER and NEPM liable for an alleged nuisance they don't own or operate. *Id.* at 6-7. The proposed amendment was therefore futile. *Id.*

Plaintiff now moves for review of the magistrate judge's order denying the second contested motion to amend. Doc. 127.[3]

## II.  STANDARD

There is some disagreement between the parties about whether the underlying ruling on the motion to amend in this case was dispositive or non-dispositive. *See* Doc. 127 at 3-4 ("The standard of review in this objection is not simple or easy to determine."); Doc. 143 at 2-3 (discussing that different standards may be appropriate depending on the reasoning for the ruling). Whether a ruling is dispositive determines the standard applied when a district judge reviews a magistrate judge's decision. *See* Fed. R. Civ. P. 72. Typically, a magistrate judge's ruling on a motion to amend is considered non-dispositive. But it may be considered dispositive where it has the effect of

---

[3] Plaintiffs in *Renne*, *Bloom*, and *Stallbaumer* are all represented by the same counsel, and all have filed similar motions for review.

removing a claim. *Pedro v. Armour Swift-Eckrich*, 118 F. Supp. 2d 1155, 1157 (D. Kan. 2000). Denying leave to amend on futility grounds is often considered dispositive. *Id.*

Here, the magistrate judge denied leave to amend for failure to meet Rule 16's good-cause standard, undue delay, and futility. Given the futility ruling, and particularly given that the issues raised in the instant motion have been repeatedly raised in this case, the undersigned will construe the underlying ruling as dispositive and will employ de novo review.[4]

Rule 72(b) allows a party to file objections to dispositive rulings, and "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). In a de novo review, the Court makes an independent determination of the issues. *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988). "The district judge is free to follow a magistrate's recommendation or wholly to ignore it, or, if he is not satisfied, he may conduct the review in whole or in part anew." *Id.* (internal brackets, quotation, and citation omitted).

### III.   ANALYSIS

Plaintiff relies primarily on three points to argue that he should be permitted to amend the complaint again and re-assert his nuisance claims against NEER and NEPM. First, he argues that ESI discovery shows that NEER and NEPM representatives were extensively, and perhaps solely, responsible for the development, placement, and construction of the windmills about which Plaintiff complains. Doc. 127 at 5. Second, he argues that statements made by a NEER representative at a county commissioners' meeting in April 2023 suggest that NEER does consider itself as the owner of all its projects in Kansas. *Id.* at 6-7. Third, Plaintiff argues that the withdrawal

---

[4] Review of non-dispositive rulings uses a clearly erroneous or contrary to law standard. *See* Fed. R. Civ. P 72(a). Given that this is generally a more deferential standard than de novo review, the Court notes that it would reach the same decision under either standard.

of certain arguments in *Stallbaumer* should be construed as a concession that NEER and NEPM do own the project in question. *Id.* at 7-8. These arguments are relevant under both the Rule 16 and Rule 15 analysis.

### A. Rule 16

The Tenth Circuit has held that "parties seeking to amend their complaints after a scheduling order deadline must establish good cause for doing so." *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1241 (10th Cir. 2014). This requires a showing that the deadline could not have been met despite diligent efforts. *Id.* at 1240. This may be shown by pointing to newly discovered evidence. *Id.* If a plaintiff fails to meet the Rule 16 standard, a court is within its discretion to deny leave to amend. *See id.* at 1241.

Here, the scheduling order set a February 2, 2023 deadline for motions to amend. Doc. 70 at 2. Plaintiff filed his motion on July 3, 2023. Accordingly, Plaintiff must show good cause for seeking to amend the pleadings after the scheduling order deadline.

The magistrate judge noted that Plaintiff failed to satisfy or even address Rule 16's good-cause standard. Doc. 113 at 3.[5] In the motion for review, Plaintiff attempts to demonstrate his diligence with regard to the February 2 deadline. Doc. 127 at 9. But it is not proper for Plaintiff to try to establish compliance with the Rule 16 standard when he failed to make that argument before the magistrate judge. *See Reyes v. Larimer Cnty.*, 796 F. App'x 497, 499 (10th Cir. 2019) ("In any event, arguments and claims raised for the first time in an objection to a magistrate judge's report and recommendation are waived."); *Columbian Fin. Corp. v. Stork*, 2016 WL 3769552, at *2 (D. Kan. 2016) ("Similarly, the purpose of the Magistrate Judge's Act would be frustrated if there was

---

[5] The underlying motion included a footnote that stated: "This motion is being filed after the date in the Scheduling Order for amending but the definitive nature of the new evidence is compelling and should be allowed adjudication on the merits." Doc. 101 at 3 n.2. This is insufficient to meet the good-cause standard of Rule 16.

8

not a rule that '[i]ssues raised for the first time in objection to the magistrate judge's recommendation are deemed waived.'" (quoting *Marshall v. Chater*, 75 F.3d 1421, 1426-27 (10th Cir. 1996))). The Court denies leave to amend because Plaintiff fails to meet his burden under Rule 16.

Even considering Plaintiff's argument that he acted diligently, the Court is not persuaded. Plaintiff claims he could not comply with the scheduling order deadline for amending pleadings because of the timing of Defendant's ESI production. Doc. 127 at 10-12. Plaintiff's motion states that Defendant began producing documents in February 2023 and completed production on May 31, 2023. *Id.* at 10.[6] But Plaintiff apparently did not begin reviewing documents until June. *See id.* at 10-11; *see also* Doc. 127-6 at 1-2. While this may have been Plaintiff's prerogative and a cost-saving measure, this delay does not show good cause, especially where Plaintiff claims to have learned additional relevant information on this subject in April 2023 at the commissioners' meeting. Additionally, Plaintiff, who is also an attorney of record in this case and in the related cases, submitted a declaration with the motion for review stating that he and co-counsel discussed whether to seek leave to amend in April 2023 when they sought leave to file a surreply in the related *Stallbaumer* case. Doc. 127-6 at 3. In that proposed surreply, Plaintiff sought to demonstrate NEER and NEPM's involvement in Kansas and with the project. But the declaration states that Plaintiff and his co-counsel instead opted to wait until after they reviewed all the ESI, the review of which at that point would not have even started yet. *See id.* And even if Plaintiff would've been justified in seeking leave to amend in April or early May,[7] he waited until early

---

[6] During this time, there were at least three motions to amend the scheduling order. Docs. 84, 87, and 96. None of those appear to have sought any extension related to motions to amend the pleadings. If Plaintiff was concerned with the pace of ESI production, he never acted to preserve the deadline to amend the pleadings.

[7] Plaintiff also suggests that the withdrawal of certain arguments regarding personal jurisdiction in the *Stallbaumer* case in response to the motion to file a surreply was a significant development. That occurred on May 4, 2023. *Stallbaumer*, Doc. 39. Plaintiff still waited two months before seeking leave to amend.

July. The Court thus finds Plaintiff has not satisfied the good-cause standard under Rule 16 for amendments after the scheduling order deadline. The Court denies the motion for this reason alone.

### B. Rule 15

Although the Court denies the motion for failure to meet Rule 16's good-cause standard, it will consider whether leave to amend would be proper under Rule 15. Rule 15(a)(2) states that successive amendments to pleadings may be made "only with the opposing party's written consent or the court's leave," and a "court should freely give leave when justice so requires." Whether to grant leave to amend is discretionary. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006). Factors considered are undue delay, bad faith, failure to cure deficiencies in previous amendments, undue prejudice to the opposing party, and futility of amendment. *See id.*

#### 1. Undue Delay

For the same reason that the Court found Plaintiff failed to exercise diligent efforts under Rule 16, the Court finds Plaintiff unduly delayed under Rule 15. *See id.* at 1206 (stating that delay is "undue" where there is no adequate explanation for the delay).

#### 2. Futility

The Court may also deny leave to amend based on futility. "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Panicker v. State Dep't of Agric.*, 498 F. App'x 755, 757 (10th Cir. 2012) (internal quotation and citation omitted).

In the motion for review, Plaintiff argues that newly discovered evidence makes the proposed amendment not futile. The ostensible new evidence relied on by Plaintiff is: (1) emails showing the involvement of NEER and NEPM in the development and construction of the project, Doc. 127 at 5; (2) statements by a NEER representative at the April 2023 commissioners' meeting "concerning how NEER views its control and ownership over all of its subsidiaries' projects in

Kansas," *id.* at 6; and (3) the withdrawal of certain arguments by NEER and NEPM in the *Stallbaumer* case, *id.* at 7. Plaintiff argues this evidence shows that Soldier Creek did not have any employees during the "critical periods relevant to the complaint[]" and that all of the work was directed and performed by NEER and NEPM employees. *Id.* at 3. According to Plaintiff, the newly discovered evidence "now proves . . . that NEER and NEPM are responsible for undertaking all conceivable actions that resulted in these nuisances being created and located near Plaintiffs' properties and are partially and/or jointly liable for it." *Id.*; *see also id.* at 5 ("Newly discovered evidence proves that both NEER and NEPM employees undertook that conduct prior to the Project becoming operational and bear partial and/or joint liability, as Plaintiffs have alleged from the beginning.").

As discussed above, the Court previously dismissed NEER and NEPM because the only surviving claim was a nuisance claim, and it was undisputed that Soldier Creek is the sole owner and operator of the wind farm, i.e. the alleged nuisance. *See* Doc. 56 at 12-18. Plaintiff had not identified any valid basis to hold NEER and NEPM liable for nuisance under those circumstances. *Id.* Although joint and several liability was alleged initially, it was only via an unsupported legal conclusion in the complaint. *Id.* at 13. Although Plaintiff alleged NEER, NEPM, and Soldier Creek formed a joint venture or common enterprise, no facts were alleged regarding the existence of either. *Id.* And although Plaintiff contended NEER and NEPM were directly liable for nuisance because they were involved in developing and constructing the project, the Court found Plaintiff had failed to explain how NEER or NEPM's "involvement at some point in the construction of the wind turbines renders them directly liable for nuisance under Kansas law." *Id.* at 16.

After considering each category of new evidence, the Court finds that none of the categories of evidence cited by Plaintiff would change this analysis.

11

### a.     ESI

Plaintiff first points to emails that he says show NEER and NEPM's involvement in the project. The Court has reviewed the emails attached to the proposed amended complaint. *See* Doc. 110 at 4. Plaintiff says these emails show that NEER employees were heavily involved "over actions like tower placement, construction, and foreknowledge of setback non-compliance at the center of the claims in this case." *Id*. But NEER and NEPM's involvement in the project has been alleged from the beginning. It is not a new allegation. The problem has been Plaintiff's failure to explain <u>how</u> that involvement makes NEER or NEPM liable for nuisance, which is the only claim left, where it has been acknowledged by both sides that Soldier Creek is the owner and operator of the project. Perhaps there is a legal theory that would make a nuisance claim against a non-owner of an alleged nuisance viable. But despite the Court's repeated questioning on this point, Plaintiff has not identified or supported what that theory is.

The Court finds itself back at the same impasse.[8] Plaintiff states that the new evidence cited shows that NEER and NEPM "are partially and/or jointly liable" for the project. Doc. 127 at 3. But, again, this is a legal conclusion without any supporting authority. The Court understands Plaintiff's emphatic position to be that NEER and NEPM had a significant hand in building the wind farm. But they do not own it now, and Plaintiff has yet to explain how NEER and NEPM are liable for an alleged nuisance they do not own or operate.

### b.     Statements at Commissioners' Meeting

Plaintiff also relies on statements by a NEER representative at a county commissioners' meeting in April 2023. The Court has reviewed those statements. The first exchange was

---

[8]   Independent of the reasons cited throughout this order, denial of leave to amend would therefore also be appropriate because Plaintiff has failed to cure deficiencies identified by the Court. *See Minter*, 451 F.3d at 1204.

discussing NEER or NEPM representatives going onto property without authorization and damaging fields, and whether they would take responsibility for that. Doc. 110 at 5-6. That's not at issue here. The NEER representative also explained that the projects are built and then held by a separate entity. *Id.* at 6. That is precisely what occurred here with Soldier Creek. The NEER representative, speaking somewhat generally, then says he doesn't think there is "inability to pierce the corporate veil." *Id.* Even to the extent this statement could be read to encompass all NextEra projects in Kansas, including the Soldier Creek project, it is not a reasonable inference to conclude that the separate entity of Soldier Creek can or should be disregarded in this case. Nor can it be reasonably construed as a concession by NEER and NEPM that they can be sued for nuisance with regard to the project owned and operated by Soldier Creek. Whether and to what extent a party can pierce a corporate veil is a legal issue, and Plaintiff offers no analysis on that point.

Plaintiff also contends that statements later made at the meeting that NEER oversees projects in Kansas means conclusively that NEER in actuality owns the project, and that NEPM and Soldier Creek are alter egos of NEER. The Court disagrees that these statements go that far. Whether an entity is an alter ego of another is a legal conclusion. The statements of a NEER employee at a commissioners' meeting apparently convened to discuss a separate project does not establish that NEPM and Soldier Creek are alter egos of NEER in this case as to this project. And as discussed above, the involvement of NEER and NEPM and the fact that Soldier Creek is the entity created to own and operate the project has been alleged since the start of this case. The testimony at the commissioners' meeting, however, does not address the questions that have been raised by the Court in the ruling on the motions to dismiss. *See* Doc. 56 at 13-18.

### c. Withdrawal of Arguments in *Stallbaumer*

The final piece of evidence Plaintiff relies on to argue amendment is not futile is NEER and NEPM's withdrawal of certain arguments in *Stallbaumer*. Plaintiff construes that withdrawal as a concession of sorts by NEER and NEPM that they are in fact owners and operators of the wind farm. *See* Doc. 101 at 3 ("In abruptly abandoning nearly two years worth of repeated assurances and emphatic arguments to this Court, NEER or NEPM abandoned oft repeated and heavily relied upon false assertions that they did not 'own or operate' the Project . . . .").

The Court disagrees that NEER and NEPM made any such concession. The withdrawn arguments related to personal jurisdiction. *See Stallbaumer*, Doc. 40 at 9 n.6. NEER and NEPM explicitly did not withdraw any arguments under Rule 12(b)(6), including their argument that they could not be liable for nuisance because they are not the owner and operator of the property. *Stallbaumer*, Doc. 39 at 2. Plaintiff's argument on this point does not overcome futility.

## IV. CONCLUSION

The Court concludes that leave to amend should be denied for failure to comply with Rule 16. Leave to amend is alternatively denied for failure to comply with Rule 15, particularly as to undue delay and futility.

THE COURT THEREFORE ORDERS that Plaintiff's Objection or Appeal of the Magistrate Judge's Order (Doc. 127) is OVERRULED. The Motion to Amend (Doc. 101) is DENIED.

IT IS SO ORDERED.

Dated: September 25, 2023          /s/ Holly L. Teeter
                                   HOLLY L. TEETER
                                   UNITED STATES DISTRICT JUDGE